IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

CLERK'S OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED

OCT - 8 2015

JULIA C. DUDLEY, CLERK
BY: *A. Blaylock*
DEPUTY CLERK

| | |
|---|---|
| Lucy Towler, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| Meshel Cardiology, P.C., | ) CASE NO: 1:15CV54 |
| | ) COMPLAINT |
| Defendant. | ) |

## VERIFIED COMPLAINT

### I. INTRODUCTION

1. Plaintiff, LUCY TOWLER ("Ms. Towler"), alleges that Defendant, MESHEL CARDIOLOGY, P.C., has and continues to violate her rights under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181, *et seq.,* and its implementing regulations, 28 C.F.R. Part 36, by refusing to provide effective communication during her medical appointments.

2. Specifically, Ms. Towler alleges that Defendant refused to provide Ms. Towler, who is deaf, with a certified American Sign Language ("ASL") interpreter for communication during her appointments at Defendant's office. Instead, Defendant required Ms. Towler to bring her daughter with her to medical appointments to serve as interpreter for her, violating 28 C.F.R. § 26.303 (c)(2).

3. Therefore, Defendant has unlawfully discriminated against Ms. Towler by refusing to provide an ASL interpreter and denying her an appointment in violation of her rights under the ADA. Ms. Towler seeks injunctive relief against the Defendant and an award of her costs and attorneys' fees incurred in this action.

## II. JURISDICTION AND VENUE

4. This court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 as this action arises from the American with Disabilities Act, 42 U.S.C. § 12181, et seq., which prohibits discrimination against persons with disabilities with regard to their full participation in and access to places of public accommodation.

5. This Court has subject matter jurisdiction over this action pursuant to 8 U.S.C. § 1331 and § 1343, as it raises a federal question and falls under a federal civil rights law, respectively.

6. Venue is proper under 28 U.S.C. § 1391 because the circumstances giving rise to this cause of action occurred within this District, and because Defendant operates its office within the District.

## III. THE PARTIES

7. Plaintiff, Lucy Towler ("Ms. Towler"), is domiciliary of the State of West Virginia, and a resident of McDowell County.

8. Ms. Towler is a deaf individual. She has been deaf since birth and is a graduate of the West Virginia School for the Deaf and Blind. ASL is her primary language. Because Ms. Towler attended a school for the deaf, she never learned the English language, which differs substantially from ASL. Accordingly, she cannot lip read and communicates primarily through the use of ASL.

9. Ms. Towler is an individual with a disability as defined by the ADA because she has "a physical or mental impairment that substantially limits one or more of the major life activities." 42 U.S.C. § 12102 (2) (A).

10. Defendant Meshel Cardiology P.C., owns and operates a medical office, a public accommodation within the meaning of Title III of the ADA, 42 U.S.C. § 12181 (7)(F), 28 C.F.R. § 36.104.

11. Defendant's medical office is located at 10 Westwood Medical Park, Bluefield, VA 24605.

12. Defendant is a registered Virginia Corporation, and can be served with process by serving its

registered agent, Jack C. Meshel, W. Cumberland Rd. Unit #10, Westwood Medical Park, Bluefield, Virginia 24605.

## IV. STATEMENT OF FACTS

### A. Original Appointment for Medical Services

13.   Ms. Towler had a heart attack in January 2014, and therefore requires regular appointments with a cardiologist. Following her heart attack, she decided to receive cardiology services from Defendant in January 2014. An appointment was scheduled and the initial scheduled appointments in January 2014 and March 2014 were delayed due to bad weather.

14.   Upon information and belief, Ms. Towler scheduled a cardiology appointment through videophone relay services at Defendant's office for June 17, 2014.

15.   Upon information and belief, the West Virginia Advocates Inc.[1] made a request on Ms. Towler's behalf that an ASL interpreter be present at this appointment.

16.   Upon information and belief, Defendant denied Ms. Towler ASL interpreter services for the appointment, stating that he was not required to provide these services to an individual who is not a resident of Virginia.

### B. Subsequent Rescheduling of Appointments

17.   Defendant rescheduled the June 17, 2014 appointment for September 11, 2014, because he did not acquire an ASL interpreter.

18.   Defendant subsequently cancelled the September 11, 2014 appointment, and a new appointment date was never scheduled.

19.   In October 2014, Ms. Towler attempted to schedule another appointment. Defendant refused to schedule an appointment for Ms. Towler.

---

[1] West Virginia Advocates, Inc. is the designated Protection and Advocacy system for individuals with disabilities in West Virginia.

20. Defendant reportedly notified Ms. Towler that his continued refusal to provide an ASL interpreter was because she is a resident of West Virginia, and its medical office is located in Virginia.

21. Upon information and belief, Ms. Towler requested that Defendant provide a qualified ASL interpreter in March 2014. In an effort to facilitate provision of an ASL interpreter, Ms. Towler referred Defendant to a list of qualified interpreters, which includes interpreters who are licensed to provide medical interpretation services in Virginia and provide ASL interpretation in the Bluefield area.

**C. dLCV's Attempts to Remedy**

22. In April, 2014, Ms. Towler sought assistance from the disAbilty Law Center of Virginia ("dLCV")[2] in acquiring ASL interpreter services prior to her June 17, 2014 appointment at Defendant's office.

23. dLCV sent Defendant a letter dated May 13, 2014, detailing the requirements for providing an interpreter under Title III of the ADA. This letter explained that, as the ADA is a federal statute, accommodations are required regardless of the patient's residency in the state they are seeking medical services. Exhibit A.

24. On August 29, 2014, after Ms. Towler's appointment was postponed, dLCV sent a second letter to Defendant. This letter again outlined Defendant's obligations under the ADA to provide accommodations to ensure effective communication. The original May 13 letter was also attached. Exhibit B.

25. On January 23, 2015 after Defendant denied Ms. Towler an appointment, dLCV sent a third letter to the Defendant. This letter again explained Defendant's duty to accommodate Ms. Towler under the ADA. Attached was a recent press release detailing settlement of a similar case, where no ASL interpreter was provided to a deaf patient during multiple medical appointments. Exhibit C.

**D. Defendant's Continued Refusal to Provide Effective Communications**

---

[2] disAbility Law Center of Virginia is the designated Protection and Advocacy system for individuals with disabilities in Virginia.

26. After Ms. Towler's request for an ASL interpreter, Defendant continued to reschedule and cancel Ms. Towler's appointments. Ultimately, he agreed to see Ms. Towler in May 27 2015, on the condition that she bring her daughter to serve as interpreter.

27. Upon information and belief, Ms. Towler did attend this appointment accompanied by her daughter Penny Hodges who provided interpretation during the appointment.

28. Upon information and belief, at the time of filing this action, Ms. Towler has an appointment scheduled with Defendant's medical office in September 2015. Defendant has again said that he will only see Ms. Towler if she brings her daughter to provide ASL interpretation for the medical appointment.

29. Ms. Towler's daughter is not a licensed ASL interpreter and therefore is not qualified to provide interpretive services during a medical appointment.

30. Ms. Towler's daughter resides in Bassett, Virginia, approximately 115 miles from Defendant's office. Her attending Ms. Towler's medical appointments therefore creates a substantial hardship.

31. The ADA Technical Assistance Manual, issued by the United States Department of Justice, clarifies that requiring a deaf person to bring a family member to provide interpretation does not constitute effective communication for a person who communicates using ASL, due to family members not being impartial and not having adequate assurances that they are qualified to provide ASL interpretation. Exhibit D.

## V. CAUSE OF ACTION

### Defendant violated and continues to violate the Americans with Disabilities Act

32. The allegations of Paragraphs 1 through 31 of this Complaint are hereby re-alleged and incorporated by reference as if fully stated herein.

33. At all relevant times, Ms. Towler has been and remains a person with a disability for purposes of the ADA.

34. At all relevant times, Defendant has operated and continues to operate a place of public

accommodation for purposes of the ADA, because Defendant's office is a "professional office of a health care provider." 42 U.S.C. § 12181 (7) (F).

35. Ms. Towler has previously received cardiology care from Defendant and wishes to continue to receive medical care from Defendant. Because there are few alternative cardiologists available in the Bluefield area, finding another cardiologist to provide cardiology services to Ms. Towler would be burdensome.

36. Because Defendant operates a place of public accommodation, it is subject to the prohibitions and requirements of Title III of the ADA. 42 U.S.C. § 12181, *et. seq.*

37. Title III of the ADA states:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operated a place of public accommodation. 42 U.S. C § 12182 (a).

38. Title III of the ADA defines "discrimination" by a public accommodation as including a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations;. 42 U.S.C. § 12182 (b)(2)(A)(ii).

39. The ADA and its regulations specific that "[a] public accommodation shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c)(1).

40. The ADA and its regulations state that for a person who communicates in ASL "appropriate

auxiliary aids and services shall include qualified interpreters on-site or through video remote interpreting (VRI). . . ." 28 C.F.R. § 36.303(b)(1).

41. The ADA and its regulations specify that "[a] public accommodation shall not require an individual with a disability to bring another individual to interpret for him or her." 28 C.F.R. § 36.303 (c)(2).

42. Before and after June of 2014, and continuing through the present, Defendant maintains a policy and practice of not providing qualified sign language interpreters when necessary.

43. As described above, Defendant discriminated against Ms. Towler, a deaf individual, by excluding her from participation in and denying her the benefits of its services, programs, or activities, and by subjecting her to discrimination on the basis of disability, in violation of section 302 of Title III of the ADA, 42 U.S.C. § 12182, and its implementing regulations at 28 C.F.R. Part 36.

44. Defendant subjected Ms. Towler, a qualified individual with a disability, to discrimination on the basis of her disability in the provisions of services, programs, or activities of its public accommodation by:

    A. failing to furnish qualified sign language interpreters to Ms. Towler to afford her an equal opportunity to enjoy the benefits of the services, programs, or activities of its medical office in violation of 42 U.S.C. § 12182(b)(2)(A)(iii), and its implementing regulation at 28 C.F.R. § 36.303 (c);

    B. failing to make reasonable modifications in policies, practices, and procedures as necessary to avoid discrimination on the basis of disability by repeatedly failing to provide a qualified sign language interpreter to Ms. Towler, in violation of Title III of the ADA, 42 U.S.C. § 12182 (b)(2)(A)(ii), and its implementing regulation at 28

C.F.R. §36.302;

C. continually postponing and canceling Ms. Towler's appointments and eventually refusing to provide any medical services to Ms. Towler on the basis of her need for an ASL interpreter in violation of 42 U.S.C. § 12182(b)(2)(A)(iii), and its implementing regulation at 28 C.F.R. § 36.303 (c).

45. Ms. Towler has been and will continue to be harmed if Defendant is not required to provide effective communication and otherwise comply with the requirements of Title III of the ADA, 42 U.S.C. § 12181-12188, and 28 C.F.R. Part 36, due to an inability to effectively communicate with her cardiologist, as well as the additional cost of Ms. Towler having to bring her daughter with her to appointments.

46. Therefore, Ms. Towler prays that this Court Enjoin Defendant to comply with the ADA and ensure that Ms. Towler receive qualified ASL interpreter services from Defendant.

47. This action only seeks to remedy Defendant's refusal to provide an ASL interpreter and medical services to Ms. Towler. It does not address or seek to remedy any ADA violations or architectural barriers not specifically alleged herein. Ms. Towler acknowledges that there may be other ADA violations and other areas of inaccessibility in Defendant's office; however, these areas are not now known nor alleged in the present action. As this action does not address any other possible ADA violations not specifically alleged above, Ms. Towler reserves the right to bring a separate action to request appropriate relief and remedy of any such other ADA violations.

## VI. PRAYER FOR RELEIF

WHEREFORE, Plaintiff prays that the court grant the following relief:

A. Issue a permanent injunction prohibiting Defendant from discriminating against Ms. Towler on the basis of hearing disabilities;

B. Issue a permanent injunction requiring Defendant to amend its policies and

procedures to comply with the ADA and its regulations, and provide training on such for each of its employees, to ensure the medical office and all of its services are accessible and usable by individuals with disabilities;

C.   Issue a permanent injunction requiring Defendant to furnish appropriate auxiliary aids and services, including qualified sign language and oral interpreters, to persons who are deaf or hard of hearing, when necessary for effective communication;

D.   Issue a permanent injunction prohibiting Defendant and his employees from discriminating against Ms. Towler because she has opposed unlawful practices under the ADA, or because she brought this action;

E.   Order Defendant to pay reasonable attorney's fees, litigation costs, and other expenses incurred by Ms. Towler; and

F.   Award any such other and further relief as it deems necessary, just, and proper.

**Dated:**

Respectfully submitted,

disAbility Law Center of Virginia
1512 Willow Lawn Drive
Suite 100
Richmond, VA 23230

BY: Zachary Devore
Virginia State Bar Number: 65401
Zachary.devore@dlcv.org

Michael Gray
Virginia State Bar Number: 42811
Michael.gray@dlcv.org

Steven M. Traubert
Virginia State Bar Number: 41128
Steven.traubert@dlcv.org

Disability Law Center of Virginia
Attorneys for Plaintiff
1512 Willow Lawn Drive
Suite 100
Richmond, VA 23230
Phone: (804) 225-2042
Fax: (804) 662-7057

I declare under penalty of perjury that the foregoing is true and correct.

Signed and verified by: _____*Lucy Towler*_____  Date: 9/8/2015
                            Lucy Towler

Subscribed and Sworn before me this ___8___ day of __September__, 2015
In the County/City of __Bluefield/Tazewell__, Virginia.

_____
Notary Signature

[Notary seal: STEVEN M TRAUBERT, COMMONWEALTH OF VIRGINIA, NOTARY PUBLIC, REGISTRATION NO. 7521358, MY COMM. EXPIRES 02/29/2016]